FILED
MAY 2 9 2020
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KELVIN SANTANA,                                    6:18-CV-06651-MJR
                                                   DECISION AND ORDER
                        Plaintiff,

        -v-

ANDREW SAUL,
Commissioner of Social Security,[1]

                        Defendant.

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 18)

        Plaintiff Kelvin Santana ("plaintiff") brings this action pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying him Supplemental Security

Income ("SSI") under the Social Security Act (the "Act").  Both parties have moved for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 11) is granted, defendant's motion

(Dkt. No. 16) is denied, and this case is remanded to the Commissioner for further

administrative proceedings consistent with this Decision and Order.

## BACKGROUND

        Plaintiff filed an application for SSI on August 6, 2015 alleging disability since June

1, 2014 due to schizophrenia.  (See Tr. 132-41, 158)[2]  Plaintiff's application was initially

---

[1]  Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party
pursuant to Fed. R. Civ. P. 25(d).
[2]  References to "Tr." are to the administrative record in this case.

denied on December 15, 2015. (Tr. 14)  Plaintiff filed a written request for a hearing on

December 30, 2015. (Tr. 14, 64-87)  A video hearing was held before Administrative Law

Judge Michael Carr ("the ALJ") on March 9, 2017. (Tr. 14, 38-63)  Plaintiff and his father,

Edwin Santana, testified at the hearing.[3]  (Id.)  The ALJ also received testimony from

Vocational Examiner ("VE") James Soldner.  (Id.)  On August 23, 2017, the ALJ issued a

decision finding that plaintiff's condition did not meet the standard for disability as defined

by the Act since August 6, 2015, the date his application was filed.  (Tr. 14-24)  The

Appeals Council denied plaintiff's request for review of the ALJ's determination on June

10, 2018, and this action followed.  (Tr. 1-7)

Born on February 14, 1990, plaintiff was twenty-five years old when he filed for

SSI. (Tr. 22, 132)  He has a high school education and is able to communicate in English.

(Tr. 23)  His past work experience includes retail sales clerk and stock clerk.  (Tr. 22)

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act,

the Commissioner's factual determinations "shall be conclusive" so long as they are

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

relevant evidence as a reasonable mind might accept as adequate to support [the]

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

and citation omitted).  "The substantial evidence test applies not only to findings on basic

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[3] Plaintiff, who was notified of his right to representation, chose to appear and testify *pro se* at the hearing.
(Tr. 14)  Plaintiff is represented by counsel in the instant action.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such

3

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first,

4

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date of August 6, 2015.  (Tr. 16)  At step two, the ALJ found that plaintiff has the severe impairment of schizophrenia.  (*Id.*)  At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 16-18)  Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels. [With respect to non-exertional limitations, plaintiff] can perform simple, routine tasks; and make simple work-related decisions.  He can tolerate occasional contact with supervisors and coworkers, but no contact with the general public.  Moreover, [plaintiff] cannot engage in tandem work.  He cannot engage in work along conveyor belts or assembly lines.  Additionally, he cannot operate a motor vehicle or heavy machinery, and he cannot be exposed to unprotected heights.

(Tr. 18)

Proceeding to step four, the ALJ concluded that plaintiff is unable to perform any past relevant work.  (Tr. 22)  The ALJ went on to find that based upon plaintiff's age, education, work experience, RFC and the testimony of the VE, there are jobs which exist in significant numbers in the national economy which plaintiff can perform, such as laundry worker and marker.  (Tr. 22-23)  Thus, the ALJ ultimately concluded that plaintiff

has not been under a disability, as defined by the Act, since August 6, 2015, the date his application for SSI was filed.

IV.   _Plaintiff's Challenges_

Plaintiff argues that the ALJ improperly relied on stale medical evidence and his own lay opinion to fashion an RFC that was not supported by substantial evidence.  (*See* Dkt. No. 11-1 (Plaintiff's Memo. of Law)).   Plaintiff also argues that the ALJ failed to develop the record.  (*Id.*)  For the reasons stated below, the Court agrees and finds that remand is appropriate.

### _Plaintiff's Mental Impairment_

Plaintiff received inpatient treatment at Strong Memorial Hospital between July 2, 2014 and July 16, 2014 for an onset of psychosis.  (Tr. 261-71)  His symptoms included paranoia, aggression, erratic behavior, auditory hallucinations, depressed mood, blunted affect, ideas of reference, thought broadcasting, and latent speech.  (Tr. 219, 221)  At that time, plaintiff's treatment providers noted that his symptoms were consistent with schizophreniform disorder and that he was likely to be diagnosed with schizophrenia.  (Tr. 219)  Plaintiff was prescribed Lorazepam, Risperidone, and Haldol.  (*Id.*)  Plaintiff was discharged from inpatient care with a plan to follow-up with outpatient treatment to "aggressively target his symptoms and monitor for medication side effects."  (Tr. 221)  The medical record before the Court demonstrates that from the time of his discharge from inpatient care in July 2014, through April 2017, plaintiff received regular treatment for schizophrenia.   He was prescribed a variety of medications and had frequent appointments as well as behavioral therapy sessions with physicians, psychiatrists, nurse practitioners and social workers.

*2015 Opinion Evidence*

On October 20, 2015, a little over a year after plaintiff's discharge from inpatient treatment, consultative examiner Dr. Yu-Ying Lin conducted a psychiatric evaluation on plaintiff. (Tr. 273-76)  Dr. Lin noted that plaintiff was unkempt and poorly groomed; that his motor behavior was restless; and that he had difficulty describing his thought process. (Tr. 274)  Dr. Lin found that plaintiff could follow and understand simple directions and perform simple tasks independently. (*Id.*)  Dr. Lin also opined that plaintiff was: (1) moderately limited in maintaining attention and concentration; (2) mildly limited in maintaining a regular schedule; (3) moderately to markedly limited in performing complex tasks independently; (4) moderately limited in making appropriate decisions; (5) mildly limited in relatedly adequately with others; and (6) markedly limited in appropriately dealing with stress. (Tr. 275)  Plaintiff's insight and judgment were rated "fair to poor". (*Id.*)  Dr. Lin diagnosed plaintiff with schizophrenia and noted that "the results of the exam appear to be consistent with psychiatric problems, and this may significantly interfere with [plaintiff's] ability to function on a daily basis." (Tr. 276)  The ALJ afforded Dr. Lin's opinion limited weight because the record demonstrated that plaintiff's symptoms "improved significantly" since the October 20, 2015 consultative examination. (Tr. 22)

On December 15, 2015, a Disability Determinations psychological examiner reviewed plaintiff's medical records and opined that plaintiff was able to meet the four basic demands of unskilled work on a sustained basis.[4] (Tr. 22, 64-74)  The ALJ afforded

---

[4] It is noted, however, that the psychological examiner also found moderate limitations in plaintiff's ability to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule; (4) maintain regular attendance and be punctual within customary tolerances; (5) complete a normal workday or workweek without interruptions from psychologically based symptoms; and (6) maintain socially appropriate behavior. (Tr. 64-74)

the psychological examiner's opinion some weight because, after the assessment, the plaintiff submitted additional medical evidence that the examiner was unable to consider. (Tr. 22)

In sum, the ALJ afforded only "limited weight" or "some weight" to the October 2015 opinion of consultative examiner Dr. Lin and the December 2015 opinion of the Disability Determinations psychological examiner.  However, it is apparent that the ALJ partially relied on or credited these opinions in determining that plaintiff's mental impairments did not cause plaintiff to be disabled from work.  For example, the ALJ notes that Dr. Lin's "mental status examination...revealed that [plaintiff's] functioning was mostly within normal limits[.]"[5]  (Tr. 22)  Further, there are no medical opinions in the record which the ALJ assigned great or significant weight, and Dr. Lin's assessment is the only medical opinion by an examining doctor which provides a detailed analysis of plaintiff's functional limitations.  Indeed, the RFC is consistent with Dr. Lin's assessment that plaintiff can perform simple or routine tasks independently.  For the reasons that follow, the Court finds that the 2015 opinions by Dr. Lin and the psychological examiner were stale.  Thus, the ALJ committed error to the extent he relied on them.

"Medical source opinions that are conclusory, stale, and based on an incomplete medical record" are not considered substantial evidence to support an RFC determination.  *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (WDNY 2015), *aff'd* 652 F. App'x 25 (2d Cir. 2016).  A medical opinion may become stale "if the claimant's condition deteriorates after the opinion is rendered before the ALJ issues his decision."  *Clute ex*

---

[5] The Court questions the ALJ's characterization that Dr. Lin found plaintiff's functioning to be mostly within normal limits.  As detailed herein, Dr. Lin noted that plaintiff's psychiatric symptoms could significantly interfere with plaintiff's ability to function on a daily basis.

*rel. McGuire v. Comm'r of Soc. Sec.*, 18-CV-30, 2018 U.S. Dist. LEXIS 215156 (WDNY Dec. 21, 2018).  Here, the medical evidence in the record shows that plaintiff went on to receive treatment for schizophrenia for two and half years after the October 2015 and December 2015 opinions were rendered.  Contrary to the ALJ's suggestion that plaintiff's mental condition "significantly improved" after the 2015 consultative exam by Dr. Lin, there is evidence in the record that at least some of plaintiff's symptoms deteriorated or worsened during that time.  For example, during a treatment session with Dr. Rachael Jones on February 29, 2016, it was noted that while plaintiff demonstrated improvement since his inpatient hospitalization, he continued to have "challenges with memory, self-care and hygiene, calculation, attention and focus, and loss of general knowledge." (Tr. 419)  Plaintiff also had difficulty relating to others outside his family or understanding the consequences of his actions.  (*Id.*)  Plaintiff relied on his mother to remind him to take his medication, attend appointments, shower, and perform other activities of daily living.  (*Id.*) Plaintiff's father indicated that he did not believe plaintiff was capable of living independently or sustaining a traditional job, and Dr. Jones agreed with this assessment. (*Id.*)  A mental status examination on that date also revealed questionable auditory hallucinations.  (Tr. 420)  Dr. Jones indicated that plaintiff had been experiencing significant negative symptoms for over a year and that "there appears to be significant conative and memory impairments that are residual from his illness." (Tr. 421)  During a follow-up appointment on March 21, 2016, Dr. Jones again noted that plaintiff had "significant conative and memory impairments."  (Tr. 461-64)

Plaintiff also treated with Dr. Devyani Shah of Strong Ties, an outpatient program administered through Strong Behavioral Health, following the 2015 opinions.  On August

5, 2016, plaintiff reported to Dr. Shah that he had recently felt more anxious, shaky and nervous.  (Tr. 540)  A mental status examination revealed restricted affect as well as anxious and dysmorphic mood.  (Tr.541)  Plaintiff's medication dosage was increased. (Tr. 542)  Dr. Shah next treated plaintiff during an urgent visit on August 19, 2016, after plaintiff suffered an anxiety attack at the grocery store.   (Tr. 550)   Plaintiff was experiencing decreased energy and concentration at that time, and the dosage of his medication was again increased.  (Tr. 551-52)  Following an appointment on September 12, 2016, Dr. Shah indicated that plaintiff's symptoms rendered him unable to work for the next three months.  (Tr. 588)  During appointments on September 27, 2016 and October 17, 2016, plaintiff reported additional panic attacks with racing thoughts and dizziness.  (Tr. 576, 595-603)  On December 5, 2016, plaintiff reported to Dr. Shah that he was easily frustrated and had difficulty performing daily tasks.  (Tr. 615-17)  Dr. Shah's treatment notes indicate that plaintiff was experiencing paranoid thinking on January 9, 2017 and memory issues on February 20, 2017.  (Tr. 628, 672)

Based on the foregoing, the Court finds that there is evidence in the record that the symptoms of plaintiff's schizophrenia worsened since the October 2015 consultative examination by Dr. Lin and the December 2015 evaluation by the Disability Determinations psychological examiner.   Moreover, the subsequent medical records reflect that plaintiff had significant cognitive and memory impairments, difficulty performing daily tasks, and frequent panic attacks.  Consequently, medical evidence after December of 2015 calls into question whether plaintiff's mental impairments allow him to perform work consistent with the RFC.  *See Jones v. Comm'r of Soc. Sec.*, 10-CV-5831, 2012 U.S. Dist. LEXIS 119010 (EDNY Aug. 22, 2012) (ALJ should not have relied on

medical evidence that was 1.5 years old and did not account for plaintiff's deteriorating condition"); *West v. Berryhill*, 3:17-CV-1997, 2019 U.S. Dist. LEXIS 7616, n. 7 (D. Conn. Jan. 16, 2019) ("[T]he principle endures that an ALJ may not rely on the stale opinion of a non-examining consulting physician where subsequent evidence may alter those findings, as recognized by the Second Circuit and other judges in this district."); *Thompson v. Berryhill*, 17-CV-786, 2019 U.S. Dist. LEXIS 108748, *10-11 (WDNY June 28, 2019) ("In light of these subsequent medical records, which were not addressed in the ALJ's decision, the Court finds it appropriate to remand this case for an updated medical source opinion.")  For these reasons, the Court finds that the 2015 medical opinions as to plaintiff's functional abilities and limitations do not constitute substantial evidence in support of the RFC.

<u>2016 Opinion Evidence</u>

Next, the Court considers whether the record contains other opinion evidence consistent with the RFC finding.  To that end, the Court finds that the medical opinions rendered in 2016 regarding plaintiff's ability to work in light of his mental impairments also fail to provide substantial evidence in support of the RFC.  As noted above, Dr. Shah, plaintiff's treating psychiatrist, wrote a letter on September 12, 2016 stating that plaintiff's "psychiatric symptoms render him unable to work for the next three months."  (Tr. 696)  The ALJ afforded limited weight to this opinion because no rationale was provided.  (Tr. 21)  A few months later, in both December 2016 and January of 2017, Dr. Shah's treatment notes reveal that plaintiff intended to apply for social security disability benefits and requested, from Dr. Shah, a medical opinion in support of his application.  (Tr. 617)  Dr. Shah opined that she did not "feel [plaintiff] met the criteria for SSD" since plaintiff

"hasn't tried working part time or full time." (*Id.*)  Dr. Shah further indicated that she would "like to see [plaintiff] try a few programs with assistance…before writing a letter supporting SSD." (*Id.*)  The ALJ afforded limited weight to this opinion as well because a finding of disability is reserved for the Commissioner. (Tr. 21)  Dr. Shah's treatment notes from April 3, 2017 include a copy of her September 12, 2016 letter stating that plaintiff's psychiatric symptoms rendered him unable to work for the next three months. (Tr. 696)  Plaintiff seems to argue that the inclusion of the September 12, 2016 letter in the April 3, 2017 treatment notes constitutes a finding by Dr. Shah, on April 3, 2017, that plaintiff was unable to work at that time.  However, it is unclear to the Court if Dr. Shah's September 12, 2016 letter was included in her April 3, 2017 treatment notes because Dr. Shah intended, on April 3, 2017, to reaffirm her prior finding that plaintiff was unable to work, or if the September 12, 2016 letter was included on April 3, 2017 merely because it was part of plaintiff's prior treatment record.

For these reasons, the Court finds that Dr. Shah's various opinions in 2016 regarding plaintiff's ability to work are unclear and conflicting.  Further, Dr. Shah's opinions fail to provide any function-by-function assessment of plaintiff's mental abilities and limitations.  Thus, these opinions do not lend any support to the RFC determination. *See Silvestri v. Comm'r of Soc. Sec.*, 18-CV-357, 2020 U.S. Dist. LEXIS 26285 (WDNY Feb. 14, 2020) (treating physician opinion of "permanent total disability" which provides "no findings or explanation" and does not suggest any specific limitations is not entitled to controlling weight); *Salone v. Berryhill*, 6:16-CV-06491, 2018 U.S. Dist. LEXIS 205545, *9 (WDNY Dec. 5, 2018) (in the absences of a function-by-function assessment, plaintiff's treatment notes alone cannot constitute substantial evidence in support of the ALJ's

conclusion); *Hance v. Colvin*, 8:15-CV-1362, 2017 U.S. Dist. LEXIS 37440, *34-35 (NDNY Mar. 15, 2017) (medical opinion which did not set forth a full function-by-function assessment was insufficient to support the abilities and limitations the ALJ reached in the RFC).

<u>Lack of Substantial Evidence to Support the RFC</u>

For the foregoing reasons, the ALJ could not rely on any of the medical opinions in the record.[6] Thus, the Court finds that the record here contained insufficient evidence for the ALJ to assess plaintiff's RFC. *See Smith v. Saul*, 17-CV-6641, 2019 U.S. Dist. LEXIS 102689 (WDNY June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (finding that the ALJ, as a lay person, was not in a position to interpret the medical evidence); *Wilson v. Colvin*, 13-CV-6286, 2015 WL 1003933, at *21 (WDNY Mar. 6, 2015) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.")  The lack of a reliable medical opinion creates a gap in the record requiring remand.

The Court notes that this is not the type of case where the RFC need not be supported by a medical source statement or formal opinion because "the record is clear and contains some useful assessment of the claimant's limitations from a medical source"

---

[6] Indeed, not only could the medical opinions not be relied on for the reasons stated herein – namely that they were stale, unclear, or failed to provide a function-by-function analysis – but the ALJ only afforded some or limited weight to each medical opinion in the record. Thus, it is also unclear to the Court how the ALJ fashioned such a specific RFC without expressly relying on a medical opinion as to plaintiff's mental abilities and limitations. *See Balsamo v. Chater*, 142 F. 3d 75, 80-81 (2d Cir. 1998) (if the ALJ rejects a medical opinion, he must cite to another medical opinion that supports his position).

from which the ALJ can assess the plaintiff's RFC. *Muhammad v. Colvin*, 6:16-CV-06369, 2017 WL 4837583, at \*4 (WDNY Oct. 26, 2017).   Instead, the record here is far from clear.   As described above, treatment notes reveal that plaintiff's symptoms likely worsened or deteriorated after the October 2015 consultative exam.   Further, one of plaintiff's treating psychiatrists submitted conflicting and vague opinions as to plaintiff's ability to work.  While plaintiff has a number of treating mental health care providers, none provide a function-by-function analysis of his ability to work.  The RFC outlines plaintiff's mental limitations in a number of categories, and it is unclear how the ALJ made these determinations.  For example, it is unclear how the ALJ was able to determine, from the bare medical data in the record, that plaintiff is capable of performing simple routine tasks, making simple work-related decisions without limitation, and having occasional contact with supervisors and co-workers. *See Bailey v. Berryhill*, 1:17-CV-6013, 2017 U.S. Dist. LEXIS 192225, \*9-10 (WDNY Nov. 20, 2017) (where the record lacked any medical opinion as to how plaintiff's anxiety disorder affected her ability to work, it was unclear as to how the ALJ, who was not a medical professional, was able to conclude that plaintiff could understand, remember and carry out simple instructions and tasks, frequently interact with co-workers, and maintain focus and concentration for up to two hours at a time).  Importantly, an RFC which goes to mental impairments must be sufficiently specific and supported by detailed evidence. *See Martin v. Colvin*, 1:15-CV-01067, 2017 U.S. Dist. LEXIS 11067, \*8-9 (WDNY Jan. 26, 2017) (an ALJ's duty to develop the record is heightened where mental conditions are present).  This heightened duty "derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review."

*Piscope v. Colvin*, 201 F. Supp. 3d 456 (SDNY 2016).   The Court concludes that the instant case lacks such a thorough review.

On remand, the Commissioner shall further develop the record by either: (1) requesting clarification from Dr. Shah regarding plaintiff's mental limitations as well as an analysis of his functional capabilities; (2) requesting an opinion regarding plaintiff's mental limitations and functional capabilities from another one of plaintiff's treating mental health care providers; or (3) requesting a updated consultative examination.

### Gaps in Plaintiff's Treatment Record

Given "the essentially non-adversarial nature of a benefits proceeding," the ALJ "must....affirmatively develop the record." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *quoting Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). Specifically, the ALJ must develop the claimant's "complete medical history" for at least the twelve months preceding the month in which the claimant filed his SSI application. 20 C.F.R. 416.912(b)(1).   The ALJ's duty to develop the record applies even when the claimant is represented by counsel. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

Plaintiff filed for SSI on August 6, 2015.   Thus, a complete medical history should have included all of plaintiff's mental health treatment records beginning in August of 2014.   However, there are few, if any, treatment notes in the record from July 25, 2014, when plaintiff was released from inpatient treatment for schizophrenia, through June 22, 2015, when plaintiff attended an appointment with Dr. Rachel Nadbrzuch at Strong Ties. (Tr. 216-27, 286-88)   Moreover, the record suggests that plaintiff was receiving regular mental health treatment during this approximately one-year time period.   On his Disability Report, plaintiff indicated that he first began treatment for schizophrenia, including

16

therapy and medication, in September of 2014.   (Tr. 161)   During his consultative psychiatric exam on October 20, 2015, plaintiff informed Dr. Lin that he had been receiving treatment through Strong Ties on a monthly basis for the past year.  (Tr. 273) Notes from a June 22, 2015 appointment with Dr. Nadbruzch refer to a prior appointment on May 12, 2015.  (Tr. 282-86)  However, no notes appear in the record for a May 12, 2015 appointment.  In addition, the record reflects that plaintiff was prescribed medication on October 31, 2014 and December 1, 2014, but there are no accompanying treatment notes.   (Tr. 250-51)   Thus, there appears to be a gap in the medical record from approximately July 25, 2014 through June 22, 2015.  On remand, the Commissioner shall make an effort to supplement the record with any additional mental health treatment records from Strong Ties, or any other treating mental health care provider, in existence from the period of August 2014 through June 2015.  *See also Sotososa v. Colvin*, 15-CV-854, 2016 WL 6517788, at *3-4 (WDNY Nov. 13, 2016) (remanding where it was "apparent" that the plaintiff's mental health treatment notes were missing from the record).[7]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[7] Plaintiff also argues that the ALJ erred by: (1) failing to consider his education records which suggest that he required significant accommodation to graduate high school; and (2) failing to properly evaluate his subjective statements or complaints pursuant to 20 C.F.R. §404.1529.  Because the Court finds that the matter should be remanded for the reasons stated herein, it does not consider these arguments.  On remand, the Commissioner shall consider plaintiff's education records and subjective statements in fashioning a new RFC consistent with the further development of the record outlined herein.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:       May 27, 2020
             Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge